IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

KEVIN ANDERSON, et al.,              )
                                     )
      Plaintiffs,                    )
                                     )
v.                                   )
                                     )   No. 03-2650-P
SHELBY COUNTY GOVERNMENT,            )
CORRECTIONAL MEDICAL SERVICES,       )
INC., et al.,                        )
                                     )
      Defendants.                    )

---

### ORDER ON SHELBY COUNTY'S MOTIONS FOR SUMMARY JUDGMENT

---

Before the court are defendant Shelby County Government's ("Shelby County") Motion for Summary Judgment Based on the Statute of Limitations, Renewed Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, and Renewed Motion for Summary Judgment on the Merits. (D.E. 261, 262, 263.) For the reasons below, Shelby County's Motion for Summary Judgment Based on the Statute of Limitations is GRANTED, Renewed Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is GRANTED, and Renewed Motion for Summary Judgment on the Merits is GRANTED in part.

## I.  BACKGROUND

### A.  Procedural History

The original complaint in this case was filed on August 29,

2003, by plaintiff Lynell Marcus Butler pro se.  In his complaint, Butler alleged that, while incarcerated at the Shelby County Correctional Center ("SCCC") during parts of 2002 and 2003, he was repeatedly bitten by spiders, and that medical care for the bites was inadequate.  He alleged that permanent disfigurement resulted. Butler sued Shelby County and others under 42 U.S.C. § 1983 for violations of his rights under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as asserting causes of action for negligence, medical malpractice, intentional infliction of emotional distress, and violations of his rights under the Tennessee Constitution.  On September 29, 2003, the court entered an order granting Butler's motion to proceed in forma pauperis, dismissing the complaint with respect to all defendants except Shelby County and Correctional Medical Services ("CMS"), and ordering the Clerk of Court to issue process for Shelby County and CMS.  On October 29, 2003, Butler filed an amended complaint that added over fifty new plaintiffs (including Tyrone Dyson, Tim Edwards, Randy Johnson, and Tony Sanders) who were currently or had been incarcerated at either the Shelby County Jail ("Jail") or the SCCC, and had suffered injuries from spider bites.  The plaintiffs further amended the complaint with leave of court on March 16, 2004.[1]

---

[1]Subsequently, the parties consented to trial and entry of final judgment by the Magistrate Judge pursuant to 28 U.S.C. § 636(c).

On October 4, 2005, plaintiffs filed an amended complaint that narrowed the list of plaintiffs, and on January 30, 2006, plaintiffs filed another motion to amend the complaint, which was granted on March 8, 2006 ("Fourth Amended Complaint").

On March 30, 2007, this court granted in part and denied in part defendants' motions to dismiss, and denied defendants' motions for summary judgment. (D.E. 168.) Based on that order, the only claims that remain against Shelby County are violations of the Eighth and Fourteenth Amendments and state law claims of negligence. Eighteen individual plaintiffs remain parties to this litigation.

**B.   Remaining Allegations**

According to the Fourth Amended Complaint, the named plaintiffs were incarcerated at the Jail or SCCC for some time during 2002 and 2003.[2] These facilities are under the control of defendant Shelby County, who contracted with CMS to provide medical services for the detainees and inmates housed at both facilities. The plaintiffs allege that during 2002 and 2003, they were bitten by spiders, that Shelby County allowed the Jail and SCCC to become "infested and/or reinfested" with spiders and failed to keep these facilities free of dangerous conditions, and that Shelby County

---

[2]According to the plaintiffs' own admissions, however, all eighteen plaintiffs were inmates at the SCCC at some time between October 29, 2002 and December 31, 2003. (D.E. 270-2.) Therefore, the analysis below applies only to the SCCC, and not to the Jail.

failed to meet the plaintiffs' "medical and safety needs" causing scarring and loss of flesh and tissue.  (D.E. 122-2 at 9-10.)

Plaintiffs further allege that individuals seeking to investigate the problems at these facilities on behalf of the plaintiffs were denied access to the plaintiffs, that Shelby County failed to adequately diagnose and treat plaintiffs, and that Shelby County failed to investigate their complaints or take adequate remedial action, which amounted to negligence, gross negligence, and deliberate indifference.  (Id.)  Plaintiffs also allege that the "[r]epeated spider bites and delays and inadequate prison healthcare have resulted in cruel and unusual punishment" under the Eighth and Fourteenth Amendments.  (Id. at 10.)  Plaintiffs contend that Shelby County was deliberately indifferent in the recruitment, oversight, hiring, training, discipline and supervision of Deputy County Jailers, SCCC employees, CMS employees, and Annie's Pest Control employees, and as a result manifested a callous and reckless disregard for the rights of the plaintiffs.  (Id. at 12, 15.)

Plaintiffs claim that Shelby County deprived them of their rights under the Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.  (Id. at 10.)  Plaintiffs further assert state law claims for negligence. (Id. at 13.)  Plaintiffs seek compensatory damages, as well as an award of attorney's fees.  (Id. at 15-16.)

-4-

C.   **Shelby County's Motions for Summary Judgment**

Shelby County argues that: (1) summary judgment should be granted as to all claims that accrued before October 29, 2002, because they are barred by the one-year statute of limitations; (2) summary judgment should be granted as to the claims of the plaintiffs who were incarcerated at the time they became parties to the litigation because they have not exhausted their administrative remedies as required under the Prison Litigation Reform Act ("PLRA"); (3) summary judgment should be granted with respect to plaintiffs' Eighth and Fourteenth Amendment claims because they have not shown deliberate indifference or a policy of action or inaction by Shelby County that was the moving force behind any constitutional violations; and (4) summary judgment should be granted on plaintiffs' negligence claims because Shelby County has not breached its duty of care to the plaintiffs.

## II.   ANALYSIS

A.   **Standard of Review**

Shelby County has moved for summary judgment and has attached affidavits in support of its motions.  Rule 56(c) provides that a

> judgment . . . shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material
> fact and that the moving party is entitled to a judgment
> as a matter of law.

See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm

Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

**B.   Statute of Limitations for Civil Rights Claims**

Shelby County's Motion for Summary Judgment Based on the Statute of Limitations addresses certain claims of plaintiffs

Tyrone Dyson, Tim Edwards, Randy Johnson, and Tony Sanders, which the defendant asserts are barred by the Tennessee statute of limitations for personal injury and civil rights claims (D.E. 261.) The motion arises from additional discovery that followed the March 30, 2007, and June 30, 2008 Orders of this court. (D.E. 168, 214.) According to Shelby County, the injuries allegedly sustained by these plaintiffs occurred more than one year before they were added as plaintiffs to this litigation on October 29, 2003. Specifically, Shelby County served the following interrogatories on the plaintiffs:

> INTERROGATORY NO. 6: Have you ever filed or lodged a grievance or complaint against a corrections' employee or a correctional facility? . . . .

> INTERROGATORY NO. 7: Did you file a grievance in connection with the incident that is the subject of your complaint? . . . .

> INTERROGATORY NO. 8: For every illness, disease, injury or other affliction and every physical disability, impairment or handicap that Plaintiff alleges to have resulted from the alleged spider bites as alleged in his complaint, please state the nature and extent of such illness, disease, injury, affliction or physical or mental disability . . . .

Plaintiff Johnson responded that he had filed a grievance complaining that he was denied medical treatment with respect to a spider bite. He indicated that he was in the hospital for eight days following surgery as a result of the spider bite. His response did not indicate a specific date of his hospitalization, but the response stated that it was "the only time I has [sic] ever

been hospitalized, so records should be easily available to the Defendant." (D.E. 261-4.) Shelby County has produced the medical records for Johnson, which indicate that he was hospitalized on September 4, 2002. (D.E. 254-2.) Other than this single event, Johnson has no other claims against Shelby County.

Plaintiff Dyson responded that he submitted two grievances with respect to spider bites, one in 2001, and the other on February 22, 2003. (D.E. 261-2.) There are no medical records with respect to the 2001 spider bites. Medical records indicate that he received treatment for a "bite on leg" beginning on December 23, 2003. (D.E. 249-2.)

Plaintiff Edwards responded that he was treated for spider bites beginning on October 7, 2003. (D.E. 261-3.) Medical records confirm that he was treated in October, November, and December of 2003. (D.E. 250-2.) Edwards also responded that he had filed a grievance on May 5, 2002. (D.E. 261-3.) There are no medical records associated with that grievance.

Plaintiff Sanders responded that he had submitted grievances related to spider bites on September 8, 2001, and August 10, 2002, and that he received treatment for a spider bite on November 6, 2003. (D.E. 261-5.) No medical records have been presented to confirm the grievances from 2001 and 2002, but medical records confirm that Sanders received treatment for spider bites in 2003. (D.E. 259-2.)

Shelby County argues that the single claim brought by Johnson and the pre-October 29, 2002 claims of plaintiffs Dyson, Edwards, and Sanders are barred by the statute of limitations. All of these plaintiffs were initially named in the First Amended Complaint, which was filed on October 29, 2003. The Sixth Circuit has held that "in all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is to be applied." <u>Berndt v. Tennessee</u>, 796 F.2d 879, 883 (6th Cir. 1986); <u>see also</u> <u>Frasure v. Shelby County</u>, 4 F. App'x 249, 250 (6th Cir. 2001). Tennessee's limitations period for actions brought under federal civil rights statutes or for personal injuries is one year. Tenn. Code Ann. § 28-3-104(a)(1) (2000); <u>Berndt</u>, 796 F.2d at 883; <u>Dirks v. Tudors</u>, No. E2008-01384-COA-R3-CV, 2009 WL 1372180, at *1 (Tenn. Ct. App. May 18, 2009). Therefore, all causes of action in this case that accrued more than one year before the October 29, 2003 amended complaint are barred by the statute of limitations.[3]

It is clear from the plaintiffs' answers to interrogatories that Johnson's single claim and the claims made by Edwards for injuries in May of 2002, by Johnson for injuries in September of 2002, and Sanders for injuries in September of 2001 and August of 2002 are barred by the one-year statute of limitations. Therefore,

---

[3]Plaintiff Butler is the exception here. Any of his claims that accrued more than one year before August 29, 2003 are barred.

Shelby County's Motion for Summary Judgment Based on the Statute of Limitations is GRANTED as to these claims.

## C.   Exhaustion of Administrative Remedies Under the Prison Litigation Reform Act

Shelby County argues in the Renewed Motion for Summary Judgment for Failure to Exhaust Administrative Remedies that the claims of plaintiffs Marcus Danner, Tyrone Dyson, Tim Edwards, Andre Giden, Timothy Greer, Antonio Lipsey, William Ohman, Elton Sylvester Rubin, Jr., and Tony Sanders ("Inmate Plaintiffs"), are governed by the PLRA, that the PLRA requires prisoner plaintiffs to exhaust their administrative remedies prior to filing suit under § 1983, and that Shelby County's motion for summary judgment should be granted as to the Inmate Plaintiffs because it has demonstrated that these plaintiffs have not exhausted their administrative remedies.   (D.E. 262.)   Shelby County contends that all inmates, upon entering Shelby County's facilities, are informed of their rights and the grievance process, and that based upon a search of the grievance records for these Inmate Plaintiffs, none of them filed any grievances during the relevant time period relating to spider bites or medical treatment.

Under the PLRA, an inmate seeking to maintain an action challenging prison conditions must first exhaust all available administrative remedies.   42 U.S.C. § 1997e(a).   As the Sixth Circuit has explained:

A natural reading of the statute suggests that its

> application requires consideration of three simple
> questions. First, is plaintiff "a prisoner confined in
> [a] jail, prison, or other correctional facility?" If
> not, the statute is inapplicable. If so, a second
> question must be considered: Is the plaintiff suing under
> § 1983 respecting "prison conditions?" If not, the
> statute is inapplicable. If so, a third question must be
> considered: Did plaintiff exhaust "such administrative
> remedies as [were] available" before plaintiff "brought"
> his action? If question three is answered in the
> negative, plaintiff is in violation of the statute and
> the court is required to dismiss plaintiff's suit.

Cox v. Mayer, 332 F.3d 422, 424 (6th Cir. 2003). The duty to
exhaust administrative remedies before filing suit "applies to all
inmate suits about prison life, whether they involve general
circumstances or particular episodes, and whether they allege
excessive force or some other wrong." Porter v. Nussle, 534 U.S.
516, 532 (2003). Moreover, the PLRA requires "proper" exhaustion;
accordingly, before initiating a lawsuit the prisoner must comply
"with an agency's deadlines and other critical procedural rules."
Woodford v. Ngo, 548 U.S. 81, 90 (2006). "A prisoner does not
exhaust available administrative remedies when he files a grievance
but 'd[oes] not appeal the denial of that complaint to the highest
possible administrative level.' " Dale v. Corr. Corp of Am., No.
3:05-0319, 2006 WL 3041371, at *3 (M.D. Tenn. Oct. 24, 2006)
(quoting Wright v. Morris, 111 F.3d 414, 417 n.3 (6th Cir. 1997)).
A prisoner also may not abandon the grievance process "before
completion and then claim that he exhausted his remedies, or that
it is now futile for him to do so." Id. (citing Hartsfield v.
Vidor, 199 F.3d 305, 309 (6th Cir. 1999)).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be proved by the defendant.  <u>Jones v. Bock</u>, 549 U.S. 199, 212 (2007).  Inmates are not required to plead or demonstrate exhaustion in their complaints.  <u>Id.</u>  Under <u>Jones</u>, the plaintiffs are not required to allege with specificity the facts relating to their grievances.  <u>See</u> <u>Shire v. Greiner</u>, No. 02 Civ 6061, 2007 WL 840472, at *11 (S.D.N.Y. Mar. 15, 2007) (holding that because defendants did not offer any proof that plaintiff failed to exhaust remedies, "they have failed to meet their evidentiary burden and cannot rely on the PLRA exhaustion requirement as a basis for the dismissal of any of [plaintiff's] claims").  Moreover, as the court in <u>Cox</u> held, a plaintiff who files a complaint while a prisoner but who is later released must still satisfy the exhaustion requirement under the PLRA.  332 F.3d at 424-25.

As discovery with respect to grievances and prisoner status has concluded, the court is now able to decide the issue of exhaustion of administrative remedies as a matter of law.[4]  It is

---

[4]Shelby County's original motion for summary judgment was denied on the issue of exhaustion of administrative remedies for two reasons. First, plaintiffs contended that they were still in the process of obtaining discovery from the defendants, and argued that the motions were premature.  Based upon the entire record, the court agreed with plaintiffs.  Second, the defendants had not shown which of the plaintiffs were prisoners when they were added to this case. Because the PLRA applies only to plaintiffs who were prisoners at the time they filed suit, the motion for summary judgment could not be granted without information with respect to each particular plaintiff.

now undisputed that the Inmate Plaintiffs were in custody when they were added as plaintiffs in the first amended complaint of October 29, 2003. (D.E. 262-2, Ex. 1 at 3.) Thus, these nine plaintiffs were required to exhaust their administrative remedies with respect to the claims before the court.[5]

The Inmate Plaintiffs argue that "to exhaust in Shelby County an inmate must complain, and plaintiffs would ask this Honorable court to take judicial notice of this [sic] fact Shelby County has failed to provide nor attach to their motions the policies and procedures for such." (D.E. 268 at 7.) Quite to the contrary, Shelby County has attached a section of the inmate handbook titled "Inmate Grievance Procedure" that details the procedure for filing a grievance:

Inmate Grievance Procedure

The Division policy and staff make every effort to make certain that all inmate rights and concerns are protected

---

[5]Although the Sixth Circuit has not expressly addressed the issue of whether the PLRA applies to actions filed by former prisoners, see Cox, 332 F.3d at 430 n.1, every court of appeals that has considered the issue has held that the PLRA does not apply to former prisoners. See Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005); Ahmed v. Dragovich, 297 F.3d 201, 210 n.10 (3d Cir. 2002); Harris v. Garner, 216 F.3d 970, 979-80 (11th Cir. 2000) (en banc); Page v. Torrey, 201 F.3d 1136, 1139 (9th Cir. 2000); Greig v. Goord, 169 F.3d 165, 167 (2d Cir. 1999); Doe v. Washington County, 150 F.3d 920, 924 (8th Cir. 1998); Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998); see also McCullough v. Barnes, No. 3-05-0819, 2005 WL 2704878, at *2 (M.D. Tenn. Oct. 17, 2005); Smith v. Franklin County, 227 F. Supp. 2d 667, 676 (E.D. Ky. 2002). All other plaintiffs, including plaintiff Butler, were former inmates at the time they became parties to the litigation, and thus the PLRA's exhaustion requirement does not apply to them.

-13-

and addressed in the daily routine.  All inmates have access to Counselors, Correctional Officers and other staff to help them with their problems or concerns.  Try to solve your problem by working with the counselors and officers who work in your housing area.

If you have questions about conditions at the Division, then you should ask your Counselor to try to answer them and help you with the problem.  If your question was not answered properly, you then will have a chance to fill out a grievance complaint.  You can get a grievance form from either your Counselor or from an Officer.  You have the right to file an Inmate Grievance Complaint without worrying about what may happen to you.

Here is how you file an Inmate Grievance form:

1.   First, get an Inmate Grievance form from your Counselor or an Officer.  These forms are kept in the Counselor's Office in each building.

2.   You can ask your Counselor or an Officer for help in filling out the form.

3.   You have five [5] days to complete and turn in the form after the incident happened.  Remember, after five days there is no grievance procedure.

4.   Only one grievance can be listed on a form.  There must be specific information given with actual names of other inmates.  You must clearly state what you feel will resolve the problem - what relief or outcome are you asking for in your grievance.

5.   You must sign your own grievance form.

6.   Drop the form in one of the grievance boxes.  There are boxes in the Main Building, Auilding [sic], Women's Building, J Building, F building, and at the Adult Offender Center.  Do not put any other forms in the grievance box.

7.   Grievances that have cursing, insults, threats or other offensive remarks will not be answered unless you were quoting what someone else said.

8.   A Counselor will collect grievances from the boxes

-14-

each workday.  Grievances will be answered by staff in about within [sic] ten [10] working days from the time they get the form.

9.   If you feel that your grievance was not answered properly, you may appeal it to the Director within two (2) days after you get the response.  If you need help, ask your Counselor to help.  Make sure you mail your grievance directly to the Manager of Inmate Grievances.  The Director's office will send a response within ten [10] working days.  The Director's decision is final.

(D.E. 262-2, Ex. B.)

In addition, Shelby County attached the affidavit of Andrew Taber, Director of the Shelby County Division of Correction, who is responsible for the day-to-day operations of the SCCC.  He indicates that "[w]hen inmates are accepted into the SCCC, they are verbally informed through inmate orientation of the grievance process.  They are also issued an inmate handbook explaining the procedures."  (D.E. 262-2, Ex. 1 at 2.)  Plaintiffs state generally that they dispute that the SCCC provided them with oral and written information pertaining to their rights to medical treatment and to the grievance procedure, (D.E. 268-2 at 7), but they have failed to show beyond a mere scintilla of evidence that they did not receive inmate handbooks or were otherwise unaware of the grievance procedures.  Contrary to this assertion, most, if not all, of the plaintiffs demonstrated familiarity with getting medical treatment and with the grievance process.  For example, plaintiff Greer knew that "to file an inmate grievance an inmate has to go to a 'Class A counselor.'"  (D.E. 268-2 at 21.)

-15-

Taber also indicates that SCCC records show that no grievances were filed by the Inmate Plaintiffs in connection with alleged spider bites or in connection with medical care provided in response to an alleged spider bite. (D.E. 262-2, Ex. 1 at 3-4.) Medical records for the Inmate Plaintiffs show that each of them received medical care for alleged spider bites. In their response, however, the Inmate Plaintiffs seem to confuse filing a grievance with requesting medical treatment. For example, these plaintiffs challenge Shelby County's statement of fact that "Plaintiff Giden affirmatively alleged that he did not file a grievance in connection with the complaint." (D.E. 268-2 at 4.) Plaintiffs cite three items from Giden's medical records in response, documenting his "complaints" to medical staff, and indicated that Giden "has been bitten five times." (Id. at 4, 16.) The facts pointed to by the plaintiffs do not in any way contradict Shelby County's assertion that Giden did not submit a grievance. Instead, the plaintiffs' facts only indicate that Giden allegedly was bitten by spiders and that he requested and received medical treatment.

It is undisputed that all plaintiffs requested some medical treatment. The PLRA, however, requires that plaintiffs exhaust their administrative remedies, which in this case includes following the grievance process to its conclusion. According to the inmate handbook, the grievance process terminates upon receipt of a final determination from the Director. Shelby County has

-16-

shown that the Inmate Plaintiffs did not submit grievances for the claims at issue in this case, a finding that is supported by the affidavit of Taber and not contradicted by any evidence presented by the plaintiffs.

In addition to plaintiff Giden, the other Inmate Plaintiffs have also challenged Shelby County's claim that they did not file grievances.  Plaintiff Danner points to requests for pest control and medical care, but not to grievances.  (D.E. 268-2 at 2, 14.) Plaintiff Dyson points to several requests for medical care, as well as a grievance in 2001 and other complaints about spider bites.  (Id. at 3, 14-15.)  Assuming Dyson did file a grievance in 2001, clearly it would be barred by the statute of limitations, and in any event, his requests for medical care do not comply with the grievance procedure.  Plaintiff Edwards also argues that he requested medical care, and indicates he submitted a grievance on May 5, 2002.  (Id. at 3-4, 16.)  Like Dyson, Edwards's grievance would also be barred by the statute of limitations, and his requests for medical care do not comply with the grievance procedure.

Plaintiff Greer includes requests for medical care and discussions of his difficulty in getting a grievance form.  (Id. at 4-5, 20-23.)  Greer's deposition indicates that, although he "wrote a grievance" with respect to his treatment resulting from a severed ACL that occurred while he was playing basketball, he "didn't file

a grievance on the spider." (D.E. 267-7 at 3-6.)

With respect to plaintiff Lipsey, who is now deceased, the discovery responses indicate several requests for medical care but no grievances filed. (D.E. 268-2 at 5, 24.) Plaintiff Ohman includes requests for medical care and avers that he filed a grievance with a Counselor regarding spider bites and delay in medical care. (Id. at 6, 25.) Because Ohman has not indicated when he allegedly filed a grievance, and based on Taber's uncontradicted affidavit that no grievances were filed by Ohman or the other Inmate Plaintiffs, the court must conclude that Ohman has also failed to properly exhaust his claims.

Plaintiff Rubin points to requests for medical care and a grievance form dated October 7, 2003. (Id. at 6, 25-27.) Rubin indicated in his deposition, however, that the grievance form was actually a request for medical records. (D.E. 262-9 at 6.) The form that Rubin dated October 7, 2003, has the box indicating "Request for information" checked, instead of the "Grievance" box. (Id. at 8.) Moreover, the form does not state any grievance, but only requests Rubin's medical records for the purposes of this litigation. (Id. at 8-9.)

Finally, plaintiff Sanders contends that he made several requests for medical care and that he filed grievances on September 8, 2001, and August 10, 2002, that addressed alleged spider bites. (D.E. 268-2 at 7, 28-31.) Even assuming that these grievances were

-18-

in fact filed, they would both fall outside the statutory period, and therefore would be barred by the statute of limitations.

For the reasons discussed above, Shelby County's Renewed Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is GRANTED with respect to the § 1983 claims of all Inmate Plaintiffs.

## C.   Eighth and Fourteenth Amendment Claims

Shelby County's Renewed Motion for Summary Judgment on the Merits challenges all of the plaintiffs' § 1983 claims for violations of their Eighth and Fourteenth Amendment rights.  (D.E. 263.)

### 1.   Deliberate Indifference Standard

Shelby County moves for summary judgment on plaintiffs' claims that the defendant violated their rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments by allowing spiders to infest the jail cells and providing inadequate medical care for plaintiffs' injuries.  The Supreme Court has held that the Eighth Amendment imposes upon prison officials the duty to "provide humane conditions of confinement," and that among the obligations attendant to the discharge of that duty is to "ensure that inmates receive adequate food, clothing, shelter, and medical care."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  However, "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally

-19-

associated with criminal prosecutions . . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977). Thus, for those plaintiffs who were detained prior to trial and who had not received a formal adjudication of guilt at the time of the violation, the Eighth Amendment has no application. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); Watkins v. City of Battle Creek, 273 F.3d 682, 685 (6th Cir. 2001). Nonetheless, the Fourteenth Amendment Due Process Clause provides pretrial detainees with "a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." Watkins, 273 F.3d at 685-86; see also Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir. 1994); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985).

In order for plaintiffs to prevail on a § 1983 claim, they must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001). An Eighth Amendment claim consists of both objective and subjective

components.  Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S.
1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991); Brooks v.
Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974
F.2d 734, 735 (6th Cir. 1992).  The objective component requires
that the deprivation be "sufficiently serious."  Farmer, 511 U.S.
at 834; Hudson, 503 U.S. at 8.  The subjective component requires
that the official act with the requisite intent, that is, that he
have a "sufficiently culpable state of mind."  Farmer, 511 U.S. at
834.  The official's intent must rise at least to the level of
deliberate indifference.  Id.

In order to satisfy the objective component of an Eighth
Amendment claim, the plaintiff must show that he "is incarcerated
under conditions posing a substantial risk of serious harm," id.;
Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982), or that he has
been deprived of the "minimal civilized measure of life's
necessities."  Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman,
452 U.S. 337, 347 (1981)).  The Constitution "'does not mandate
comfortable prisons.'"  Id. (quoting Rhodes, 452 U.S. at 349).
Rather, "routine discomfort 'is part of the penalty that criminal
offenders pay for their offenses against society.'"  Hudson, 503
U.S. at 9 (quoting Rhodes, 452 U.S. at 347).  With respect to the
subjective component, a plaintiff must show that the prison
officials acted with "deliberate indifference" to a substantial
risk that the prisoner would suffer serious harm.  Farmer, 511 U.S.

-21-

at 834; Helling v. McKinney, 509 U.S. 25, 32 (1993); Woods v.
Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997); Street v. Corr.
Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Taylor v. Mich.
Dep't of Corr., 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate
indifference describes a state of mind more blameworthy than
negligence." Farmer, 511 U.S. at 835. Thus:

> *[a] prison official cannot be found liable under the*
> *Eighth Amendment for denying an inmate humane conditions*
> *of confinement unless the official knows of and*
> *disregards an excessive risk to inmate health or safety;*
> *the official must both be aware of facts from which the*
> *inference could be drawn that a substantial risk of*
> *serious harm exists, and he must also draw the inference.*
> This approach comports best with the text of the Eighth
> Amendment as our cases have interpreted it. The Eighth
> Amendment does not outlaw cruel and unusual "conditions";
> it outlaws cruel and unusual "punishments." An act or
> omission unaccompanied by knowledge of a significant risk
> of harm might well be something society wishes to
> discourage, and if harm does result society might well
> wish to assure compensation. The common law reflects
> such concerns when it imposes tort liability on a purely
> objective basis. . . . But an official's failure to
> alleviate a significant risk that he should have
> perceived but did not, while no cause for commendation,
> cannot under our cases be condemned as the infliction of
> punishment.

Id. at 837-38 (emphasis added; citations omitted); see also
Lewellen v. Metro. Gov't of Nashville & Davidson County, 34 F.3d
345, 348 (6th Cir. 1994); Bell v. Shelby County, No. 06-2456, 2006
WL 3734421, at *3 (W.D. Tenn. Dec. 15, 2006).

Even if a constitutional violation has occurred, however, it
does not necessarily follow that Shelby County is liable under
§ 1983. Instead, a plaintiff bringing a § 1983 claim against a

municipality must also allege that a municipal custom or policy, or policy of inaction, was the moving force behind the constitutional violation.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 379 (1989).  A municipality cannot be held liable for an injury caused by its agents or employees under § 1983 based on a theory of respondeat superior.  <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 691 (1978).  Rather, the plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Bd. of County Comm'rs of Bryan County, Okla. v. Brown</u>, 520 U.S. 397, 403 (1997).  The plaintiff must demonstrate a "direct causal link" between official action and the deprivation of rights, such that the "deliberate conduct" of the governmental body is the "moving force" behind the alleged constitutional violation.  <u>Waters v. City of Morristown</u>, 242 F.3d 353, 361-62 (6th Cir. 2001).  A municipal policy or custom may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice.  <u>Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis</u>, No. 02-5694, 2004 WL 103000, at *3 (6th Cir. Jan. 21, 2004).  As this court in <u>Alexander v. Beale Street Blues Co., Inc.</u>, 108 F. Supp. 2d 934 (W.D. Tenn. 1999), explained:

> Under the liberal pleading requirements of the federal
> rules, all a plaintiff need do to set forth a cognizable
> § 1983 claim against a municipality, then, is to allege
> that agents of the municipality, while acting under color
> of state law, violated the plaintiff's constitutional
> rights, and that a municipal policy or policy of inaction

was the moving force behind the violation.  No further
factual specificity is required at the initial pleading
stage.

Id. at 949.

    2.  Spider Infestation

    Shelby County argues that it has not been deliberately
indifferent to any infestation of spiders at the SCCC.  The
affidavit of Taber states that "[i]t is the policy and practice of
the SCCC to check for and prevent infestations of pests, including
but not limited to spiders.  Reports of infestations are
investigated promptly and remedial action is taken.  Shelby County
has a contracted provider to ensure regular pest control."  (D.E.
263-2 at 3.)  In addition, the affidavit of David Barber, Deputy
Administrator of Finance of the SCCC, provides that from "July 2002
through December 2003, the SCCC contracted with Annie's Termite &
Pest Control for services at the facility," and that "SCCC has
employees who are responsible for preventing infestations of
insects or pests in the facility.  Those employees ensure that the
contract pest control company provides appropriate services and
they promptly investigate reports or allegations that there are
insects or pests, including spiders, at the facility." (D.E. 263-3
at 1-2.)  Attached to Barber's affidavit are eighteen invoices from
Annie's Termite and Pest Control dated July of 2003 through
December of 2003.  (Id. at 4-21.)  Ten of the invoices specifically
indicate treatment for brown recluse spiders.  Shelby County also

-24-

references documents attached to its first motion for summary
judgment, which address insect treatments administered from August
29, 2002, through June 18, 2003. (D.E. 137-11, 137-12.) Those
documents indicate about forty separate treatments for spiders or
other unspecified pests during that time period.

Although plaintiffs argue that "[j]ust because Shelby County
paid for spraying does not mean it happened," they have not
presented the court with any evidence to suggest that at least some
spraying for spiders and insects did not occur. (D.E. 269 at 9.)
In fact, several of the plaintiffs indicate in their "Material
Facts" that spraying for insects in fact occurred at the
facilities. For example, plaintiff Butler indicated that, after he
was bitten in the medical ward, they "sprayed and sprayed and they
still didn't get them all." (D.E. 269-2 at 13.) Plaintiff Greer
"saw them spray for bugs one time." (Id. at 21.) Plaintiff Rubin
indicated, "[i]n the Spring and the Summer they sprayed every three
months, in the Winter they didn't spray at all." (Id. at 27.)

In Threatt v. Delanno, No. 06-1064-T/An, 2006 WL 1006985 (W.D.
Tenn. Apr. 18, 2006), the court found that the conduct of defendant
Whiteville Correctional Facility did not rise to the level of
deliberate indifference. In so ruling, the court indicated that if
the correctional facility had a contract with a pest control
company that provided regular spraying, the subjective component of
an Eighth Amendment violation would not be satisfied. Id. at *3

-25-

n.4 (citing <u>Tucker v. Rose</u>, 955 F. Supp. 810, 816-17 (N.D. Ohio 1997)).  While the spider infestation in the present case perhaps may have been more serious than the one at issue in <u>Threatt</u>, the contract between Shelby County and the pest control company, as evidenced by the affidavits and attached invoices, along with the statements of plaintiffs that some spraying did occur, leads this court to the same conclusion: defendant's approach to addressing concerns regarding spider infestation did not rise to the level of deliberate indifference.  Regardless of whether the spider infestation problem was "sufficiently serious" to satisfy the objective component of the deliberate indifference standard, the plaintiffs cannot satisfy the subjective component.  There is no evidence of a "sufficiently culpable state of mind" on the part of Shelby County.  Moreover, plaintiffs have not offered any proof to show that Shelby County had a custom or policy, or policy of inaction, that was the "moving force" behind any constitutional violation.  Therefore, Shelby County's Renewed Motion for Summary Judgment on the Merits is GRANTED with respect to plaintiffs' Eighth and Fourteenth Amendment claims arising from policies and responses regarding the spider infestation.

    3.   <u>Medical Care</u>

    Shelby County also argues that it has not been deliberately indifferent to the medical care of inmates at the SCCC.  Shelby County contends that "[it] contracted with CMS to provide medical

-26-

services to inmates at SCCC at all times relevant to the litigation," that "SCCC inmates are advised of their right to medical care at admission," and that "SCCC has policies and procedures governing inmates' medical care." (D.E. 263 at 13.) In support of these assertions, Shelby County again points to the affidavit of Director Taber.

The voluminous medical records of the plaintiffs produced by the defendants during discovery in this case demonstrate that every plaintiff received some level of medical treatment for their spider bites and other ailments. Viewing the evidence in the light most favorable to the plaintiffs, there is no indication of deliberate indifference toward the medical care of plaintiffs. In a similar case, Stuart v. Shelby County, No. 06-2525-JDB/dkv, 2007 WL 2471511 (W.D. Tenn. Aug. 27, 2007), this court opined as follows:

> Plaintiff does not provide any allegations demonstrating that anyone was deliberately indifferent to his medical needs. He admits that he has received medical evaluation. Although Plaintiff disagrees with the decisions made regarding treatment, a difference of opinion between a prisoner and medical personnel about diagnosis or treatment fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need.

Id. at *3. Plaintiffs highlight instances where they allege medical treatment was delayed or denied, but the wealth of the evidence that the plaintiffs present indicates that they were receiving prompt medical care from Shelby County. The isolated instances that plaintiffs highlight do not present a genuine issue

-27-

of material fact as to the constitutional adequacy of their medical care when viewed together with the rest of the plaintiffs' evidence.  Therefore, Shelby County's Renewed Motion for Summary Judgment on the Merits is GRANTED with respect to the plaintiffs' Eighth and Fourteenth Amendment claims arising from policies and responses regarding medical care.

**D.   Negligence Claims**

Finally, in Shelby County's Renewed Motion for Summary Judgment on the Merits, it argues that summary judgment should be granted on the plaintiffs' negligence claims.  However, the motion essentially incorporates by reference the arguments, exhibits, and affidavits of co-defendant CMS as set forth in CMS's motions for summary judgment.  The court therefore defers ruling on this remaining argument and will address this argument at the time that the court rules on CMS's motions.

**III.   CONCLUSION**

For the reasons above, the Motion for Summary Judgment Based on the Statute of Limitations is GRANTED, the Renewed Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is GRANTED, and the Renewed Motion for Summary Judgment on the Merits is GRANTED in part.  The case is hereby STAYED pending the court's ruling on the plaintiffs' remaining claims.

IT IS SO ORDERED.

-28-

s/ Tu M. Pham

TU M. PHAM

United States Magistrate Judge


September 30, 2009

Date